[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Gary Kaminski, and the defendant, Laura Kaminski, were married on August 19, 1989 in New Britain, Connecticut. Two children were born of the marriage: Carrie Kaminski (DOB December 3, 1988) and Kayla Kaminski (DOE July 16, 1994). The parties' marriage was dissolved on September 26, 1997. The dissolution judgment incorporated a written agreement reached by the parties as to custody, support, visitation and property distribution.
Pursuant to the agreement, the parties had joint custody of the minor children, with the plaintiff having physical custody of Carrie and the defendant having physical custody of Kayla. Additionally, the agreement provided that the plaintiff would pay child support, to the defendant in the amount of $73 per week. On November 6, 1998, the defendant filed an application for an ex-parte order of custody for Carrie. Judge Dranginis granted the ex-parte order on November 23, 1998, and ordered physical custody of Carrie to be committed to the defendant. Thus, the defendant had physical custody of both children. The child support order remained unchanged.
The State of Connecticut filed a motion to modify dated June 10, 1999, on behalf of the defendant seeking an increase in the plaintiff's child support obligation. On September 28, 1999, Family Support Magistrate Burt granted the State's motion and modified the plaintiff's child support obligation from $75 per week to $152 per week effective August 18, 1999 (the date the plaintiff was served with the motion).[1] Additionally, Magistrate Burt made the following arrearage findings: $1,640.33 to the defendant and $809.07 to the State.[2] Both arrearage findings were subject to change given the retroactive effective date of the modification entered on the same date. Given the retroactive effective date of the modification, the plaintiff owed an additional arrearage to the defendant of $334. Thus, the total arrearage owed to the defendant by the plaintiff was $2,174.33.[3]
Thereafter, the plaintiff filed a motion for modification dated October 18, 1999, seeking a decrease in his child support obligation based on the allegation that the defendant no longer had physical custody of the children. A lengthy hearing on the plaintiff's motion to modify was held on May 2, 2000, during which the parties presented testimony, evidence and argument to the court. During the hearing, the court found that consideration of the defendant's income would only make a $2 difference in the plaintiff's child support obligation and that this was not a substantial change in circumstances nor a substantial deviation from the CT Page 14528 guidelines. (Tr. at 41.)
Thereafter, the court was concerned as to whether the defendant represented to the court that she was requesting a modification of the child support order for the two children in September 1999 (and which modification was granted) when in fact one of the children was not living with her. (Tr. at 41-42.) The court heard testimony and received evidence regarding this issue, and also afforded the parties an opportunity to brief the issue for the court. (Tr. at 76, 77.) However, neither party chose to do so.
The plaintiff argued that, at the time of the September 28, 1999, modification, the defendant did not have physical custody of Kayla, failed to inform the court of this information and instead represented to the court that she had physical custody of both Carrie and Kayla. (Tr. at 18, 30, 38, 43-44.) Additionally, he argued that the defendant did not make payments to Kayla's guardian during her stay in Massachusetts for her support. (Tr. at 12.) As such, the plaintiff claimed that his child support obligation should be modified for the period of time that the child was not with the defendant. (Tr. at 39.) In essence, the plaintiff requested that the court vacate the September 28, 1999 order (Tr. at 38-39) and reinstate the original order of $75 per week for the period of time that the defendant did not have physical custody of Kayla (Tr. at 45).
The defendant argued that the September 28, 1999 order should not be vacated for the period of time that Kayla was living in Massachusetts (Tr. at 32, 39) as she remained Kayla's custodial parent (Tr. at 42-43). In the alternative, she argued that she was at least entitled to continue receiving support pursuant to the $75 per week order in effect on September 27, 1999 (Tr. at 42, 44) as she made payments to the guardian for Kayla's expenses from the weekly payments she received from the plaintiff (Tr. at 32, 39, 42).
At the May 2, 2000 hearing, the defendant testified that she first transported Kayla to Massachusetts in March 1999 and that Kayla would sometimes stay there for a weekend and sometimes for weeks at a time. (Tr. at 34-35.) Moreover, she admitted that Kayla began to reside in Massachusetts on a permanent basis the last week of August 1999. (Tr. at 34, 59.) Additionally, the defendant testified that Kayla was enrolled in school in Massachusetts on September 2, 1999, and that she was aware of this enrollment on the same date (Tr. at 50). As for Kayla's expenses during her stay in Massachusetts, the defendant testified that she and the guardian had an arrangement whereby she paid the guardian $100 per week (for Kayla and another child) and allowed the guardian to use her car. (Tr. at 55.) The defendant testified inconsistently with regard to the payments as she first indicated that she began making such payments CT Page 14529 on September 27, 1999 (Tr. at 56) and then later she indicated that the payments commenced in the last week of August 1999 (Tr. at 59). In either event, this is an admission by the defendant that the child was living in Massachusetts full-time prior to the September 23, 1999 hearing and modification. According to the defendant, she made the weekly payments until November 30, 1999, and did not pay for Kayla's expenses during the month of December 1999 pursuant to another arrangement with the guardian. (Tr. at 56.)
The defendant also claimed that she did not "specifically" know that there was a hearing at the time of the transfer of guardianship. (Tr. at 44.) She testified that she had no notice of the transfer prior to its taking place (Tr. at 51) and that she did not receive notice that it had even been filed prior to September 29, 1999 (Tr. at 51). Additionally, the defendant testified that she did not attend the September 29, 1999 transfer hearing and that the first hearing she attended in Massachusetts was on December 23, 1999 (Tr. at 60). Finally, she admitted that her handwriting appears on the notice of the Massachusetts guardianship hearing that was hand-delivered to the plaintiff two days after the hearing. (Tr. at 46-48.)
Based on the testimony and evidence presented at the May 2, 2000 hearing, the court finds the following facts. Kayla began living in Massachusetts on a permanent basis the last week of August 1999, and she was registered to begin kindergarten in Massachusetts on September 2, 1999. The defendant was aware on September 2, 1999, that Kayla was registered for kindergarten in Massachusetts, and she began paying Ms. Bristol $100 per week for Kayla's expenses the last week of August. On September 29, 1999, the Probate Court for the Commonwealth of Massachusetts granted Debbi L. Bristol temporary guardianship over Kayla for a period of ninety days, with such authority expiring on December 28, 1999. (Mass. Probate Order.) On December 23, 1999, Ms. Bristol's temporary guardianship over Kayla was terminated by the Massachusetts Probate Court. (Tr. at 29.) Since that time, the defendant has had physical custody of both Carrie and Kayla. (Tr. at 15.)
Therefore, the court finds that the defendant clearly had knowledge that Kayla was no longer living with her and was residing on a permanent basis in Massachusetts prior to the September 28, 1999 hearing and modification. She should have shared the information with the court at the September 28, 1999 hearing. Without this critical information, the court erroneously calculated the plaintiff's child support obligation based on the belief that the defendant continued to have physical custody of both children. Accordingly, the September 28, 1999 order is vacated and the original child support order of $75 per week is reinstated effective August 18, 1999. (Tr. at 76.) Additionally, the plaintiff's CT Page 14530 child support obligation is modified to $152 per week effective December 23, 1999. (Tr. at 76.)
DENESE CHISHOLM LANGLEY FAMILY SUPPORT MAGISTRATE